**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| LORENZO CLERKLEY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-20-465-G |
| | ) | |
| KYLE HOLCOMB, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Now before the Court is Plaintiff Lorenzo Clerkley, Jr.'s Motion for New Trial (Doc. No. 178), in which Plaintiff argues that a new trial should be ordered pursuant to Federal Rule of Civil Procedure 59(a) in light of an improper statement made by counsel for Defendant Kyle Holcomb during closing argument.   Defendant Holcomb has filed a Response (Doc. No. 182).

### I.    Background

On March 10, 2019, Plaintiff was shot and injured during an encounter with Defendant Holcomb, an officer with the Oklahoma City Police Department.   Plaintiff brought a claim against Defendant Holcomb under 42 U.S.C. § 1983, alleging that Defendant Holcomb used excessive force during this incident, violating Plaintiff's rights under the Fourth Amendment to the United States Constitution.   *See* Am. Final Pretrial Report (Doc. No. 144) at 5-6; Order of Mar. 10, 2025 (Doc. No. 152) (adopting Doc. No. 144 as Final Pretrial Order).[1]

---

[1] Plaintiff also brought, and proceeded to trial on, a tort claim against Defendant City of

A jury trial on this claim was held beginning March 11, 2025, and continuing through March 17, 2025.   Near the conclusion of Defendant Holcomb's closing argument, counsel stated:

> If this jury finds against Kyle Holcomb, every law enforcement officer in this state is going to hear about it.   And when those officers get in that situation and have to hesitate because they fear what this jury does, then those officers are going to end up wounded or dead.

Trial Tr. vol. V, 854.

Counsel for Plaintiff objected to the statement as improper.   *Id.*   The Court sustained the objection.   *Id.*

When Defendant Holcomb's counsel ended his argument shortly following this exchange, the Court sua sponte advised and instructed the jury as follows:

> Members of the jury, you heard counsel's statements suggesting that a verdict in favor of plaintiff might send a message to other law enforcement officers that could result in a change in their behavior that might increase injury or death of those officers.   This is an improper argument.   Counsel's opinion is completely unfounded and [it is] immaterial.   I instruct you not to consider that statement at all and to put it out of your mind entirely.

*Id.* at 855.

In the Court's preliminary jury instructions given prior to opening statements, the Court instructed the jury that "[t]he lawyers' statements and arguments are not evidence." Trial Tr. vol. I (Doc. No. 180) at 42.   In those preliminary instructions, the Court also advised the jury, "It is also possible that I may order you to disregard things that you saw

---

Oklahoma City, Oklahoma, alleging that Defendant City was vicariously liable for Defendant Holcomb's negligent use of excessive force.   *See* Am. Final Pretrial Report at 6-7; Order of Mar. 10, 2025.   That claim was voluntarily dismissed by Plaintiff immediately prior to closing arguments.   Trial Tr. vol. V (Doc. No. 180-4) at 813-15.

or heard, or statements I strike from the record.   You must completely ignore all of these things.   Do not even think about them. . . . . These things are not evidence, and you are bound by your oath not to let them influence your decision in any way." *Id.*   These directions were repeated, with slight changes in wording, in the Court's final jury instructions given prior to closing arguments.   *See* Final Jury Instr. No. 5 (Doc. No. 170). Further, in the final instructions, the Court instructed the jury, "It is also your duty to base your verdict solely upon the evidence, without prejudice or sympathy.   That was the promise you made and the oath you took." *Id.* at No. 1.   And, in the Court's closing jury instruction, given after closing arguments, the Court reiterated, "You should not let sympathy, sentiment, or prejudice enter into your deliberations . . . ." *Id.* at No. 18.

The jury found in favor of Defendant Holcomb and awarded no damages.   *See* Jury Verdict (Doc. No. 172).   Judgment was entered consistent with that verdict.   *See* J. (Doc. No. 174).   Plaintiff timely moved for new trial.   *See* Fed. R. Civ. P. 59(b).

## II.   Relevant Standards

Federal Rule of Civil Procedure 59(a)(1)(A) provides that, after a jury trial, the trial court "may, on motion, grant a new trial . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court."   Fed. R. Civ. P. 59(a)(1)(A). An improper and prejudicial statement by counsel during closing argument qualifies as such a reason.   *See*, *e.g.*, *Whittenburg v. Werner Enters. Inc.*, 561 F.3d 1122, 1133 (10th Cir. 2009) (remanding for new trial on the basis of improper closing argument).

The Tenth Circuit has stated that "[f]our factors bear on whether attorney misconduct," including improper statements by counsel during closing argument, "merit[]

3

a new trial: (1) the pervasiveness of the misconduct, (2) the taking of curative action, (3) the size of the verdict, and (4) the weight of the evidence." *Osterhout v. Bd. of Cnty. Comm'rs of LeFlore Cnty.*, 10 F.4th 978, 991-92 (10th Cir. 2021). "The ultimate question is whether the attorney misconduct influenced the verdict." *Id.* at 992 (internal quotation marks omitted). The Tenth Circuit has provided the following guidance to be considered when analyzing a motion for new trial in this context:

> Courts must ensure that every litigation be fairly and impartially conducted and that verdicts of juries be rendered only on the issues made by the pleadings and the evidence. Litigants are entitled to a verdict uninfluenced by the appeals of counsel to passion or prejudice. But courts must exercise great caution in setting aside a jury's verdict due to an improper argument. Even if some statements exceeded the bounds of permissible argument, a judgment will not be disturbed unless it clearly appears that the challenged remarks influenced the verdict.
>
> . . . . Closing remarks often occupy only a fraction of what the jurors hear and requiring a new trial is a serious and costly remedy for all involved. Because the presiding trial judge is present in the courtroom throughout the proceedings, he or she is uniquely positioned to assess the prejudicial effect of an improper argument in the context of the overall trial, as well as to fashion an appropriately tailored remedy.

*Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1168 (10th Cir. 2017) (alterations, omissions, citations, and internal quotation marks omitted).

III. *Discussion*

Plaintiff argues that the statement by counsel for Defendant Holcomb during closing argument—i.e., that the jury finding against Defendant would be heard by "every law enforcement officer in this state," cause the officers to "hesitate" in similar situations, and result in the officers being "wounded or dead"—was "highly prejudicial" and "introduced inflammatory extraneous matter that had a reasonable probability of influencing the jury."

Pl.'s Mot. (Doc. No. 178) at 3. Defendant responds that the statement at issue was an isolated one and any prejudice that might have been caused was cured through the Court sustaining an objection to the statement and promptly instructing the jury to disregard that statement. *See* Def.'s Resp. (Doc. No. 182) at 2-10, 13.

The Court considers the parties' arguments in the context of the four factors outlined by the Tenth Circuit in *Osterhout*. *See Osterhout*, 10 F.4th at 991-92.

As for the "pervasiveness of the misconduct," Defendant is correct that at issue here is a single statement. And that statement was made by counsel on the fifth day of trial, meaning that the jury would have heard what was said only after being presented extensive evidence from both Plaintiff and Defendant. These considerations lessen the likelihood that the statement influenced the jury's verdict. Still, a single statement can be prejudicial enough to influence the jury and undermine the fundamental fairness of a trial. Here, the Court finds that the statement by Defendant's counsel that law enforcement officers *will be wounded or die* if the jury finds for Plaintiff was extraordinarily prejudicial. This was an extreme example of an attorney asking the jury to decide a case based on sympathy—the common concern for the safety of the men and women working for police agencies across the state—rather than an impartial assessment of the evidence in this case. The Court cannot in this instance find that no influence occurred simply because only one improper statement was made.

As for the "size of the verdict," neither the jury's defense verdict nor any other information that can be gleaned from the jury's deliberations reveals whether the jury was in fact influenced by counsel's improper statement. A verdict of no damages is

simultaneously the least and the most a jury can do when finding for a defendant—and, so, says nothing as to whether the jury was acting based on sympathy rather than reason.

The "weight of the evidence" in this case reflects, in the Court's view, that a close decision was presented to the jury. At trial, the jury heard the testimony of Plaintiff and Defendant Holcomb, among others, and viewed multiple body worn camera ("BWC") videos that captured events before, during, and after Plaintiff was shot.

Plaintiff testified that he was 14 years old when he was shot twice by Defendant Holcomb, that Plaintiff and several friends had entered an abandoned house and were playing with and shooting air pistols, that Plaintiff climbed out a window to the back yard to explore, that at the time Plaintiff did not have either a real gun or an air pistol, that Plaintiff heard someone say "Show me your hands, drop it, drop it," that the person began to shoot, that Plaintiff fell back through the window into the house, and that only after Plaintiff Clerkley was back in the house did he realize that he had been shot. On cross-examination, Defendant's counsel pointed to statements made by Plaintiff that were inconsistent with his trial testimony.

Defendant Holcomb testified that he and other OCPD officers went to a location to investigate a report that men with guns were in an abandoned house, that as Defendant Holcomb and another officer approached the house on foot Defendant Holcomb heard what he thought was a "cap gun," that Defendant Holcomb saw through a hole in the fence a person in the back yard of the house and that the person was holding a black gun, that the gun looked real, that Defendant Holcomb yelled "Show me your hands! Drop it!," that Defendant Holcomb saw the person move the gun across his body so that even though the

6

person's side was facing Defendant Holcomb the gun was pointed at Defendant Holcomb, and that Defendant Holcomb—believing his life was in danger—fired his gun at the person four times. On cross-examination, Plaintiff's counsel pointed to statements made by Defendant Holcomb that were inconsistent with his trial testimony.

Both sides presented BWC videos. Plaintiff's counsel argued that the videos showed that Plaintiff was not holding a gun of any sort when Defendant Holcomb shot Plaintiff. Defendant Holcomb's counsel argued that the videos showed that Plaintiff had a gun (or more likely an air pistol that was designed to look like a real Glock firearm) and that, in any event, Defendant Holcomb believed that Plaintiff had a gun.

In sum, the testimony and evidence presented by the parties did not plainly resolve the question of whether Plaintiff had a gun of some sort in his hand when confronted by Defendant Holcomb or whether Plaintiff had pointed the gun toward Defendant Holcomb when Defendant Holcomb began shooting. Because the jury was presented with a close decision, the Court finds that the jury deliberations were subject to influence in a way that would not be the case if the evidence had strongly favored one side or the other.

What emerges, then, as the primary question for the Court is whether the curative action taken by the Court following the improper statement by Defendant Holcom's counsel was sufficient to remove the unfair prejudice caused by that statement. As detailed above, the Court sustained Plaintiff's objection to the improper comment and promptly gave a curative instruction, advising the jury that the statement was improper and unfounded and directing that the jury disregard the statement. Further, in the Court's preliminary and final jury instructions the Court instructed the jury to not confuse argument

7

by counsel with evidence and emphasized the obligation of jurors to disregard improper statements when told by the Court to do so. While those efforts were the most robust medicine the Court could administer, ultimately the Court is not persuaded that they were sufficient in this instance to cure the prejudice caused by a statement that law enforcement officers will be wounded or die if the jury finds against his client.

Applying the four factors outlined in *Osterhout* and the other authority and guidance set forth above, the Court finds that it "clearly appears" that attorney misconduct influenced the jury's verdict and "merit[s] a new trial." *Racher*, 871 F.3d at 1161; *Osterhout*, 10 F.4th at 991; *see* Fed. R. Civ. P. 59(a)(1)(A). Accordingly, the verdict and judgment are hereby VACATED, and the matter will be set for trial on the next regularly scheduled jury docket.

## CONCLUSION

For the foregoing reasons, Plaintiff Lorenzo Clerkley, Jr.'s Motion for New Trial (Doc. No. 178) is GRANTED.

IT IS SO ORDERED this 31st day of March, 2026.

_____
CHARLES B. GOODWIN
United States District Judge

8